City of Scranton *v.* Saul Baiderman and/or Wallace Putkowski. Wallace Putkowski, Appellant.

Argued June 7, 1982, before Judges Blatt, Williams, Jr. and Craig, sitting as a panel of three.

*Joseph E. Gallagher, Bour, Gallagher & Foley,* for appellant.

*Albert B. MacKarey,* with him *Edmund J. Scacchitti,* City Solicitor, and *Virginia Leo Sirotnak,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE WILLIAMS, JR., May 19, 1983:

Wallace Putkowski has appealed from the issuance of a preliminary injunction by the Court of Common Pleas of Lackawanna County. The trial court's order preliminarily restrained Putkowski from operating a mechanical car-crusher at his junkyard in the City of Scranton.

Putkowski owns and operates a junkyard in a district of Scranton zoned "C-1 Community Commercial," a classification that disallows junkyards as a permitted use under Scranton's zoning ordinance of 1965. Putkowski purchased the junkyard in early 1979 from one Saul Baiderman, who, in turn, had acquired the yard in 1970 from a Frank Milewski. Because Milewski had operated the junkyard for many years prior to the 1965 zoning ordinance, the operation was allowed to continue after the ordinance, under both Milewski and Baiderman, as a lawful nonconforming use of the site.[1]

During the nine years that Baiderman operated the junkyard, he had, on four occasions, engaged the use of a portable, mechanical car-crusher owned by Wallace Putkowski. On those four occasions, Putkowski brought his crusher to the yard to mechanically crush and compress junk automobiles, the purpose being to alleviate space problems caused by the accumulation of autos. Except for the four times Baiderman hired the use of the mechanical crusher, he had to process his junk vehicles by manual disassembly and the use of a crane with a "big drop."

---

[1] The location of the junkyard is 417 North Keyser Avenue.

After Putkowski had purchased the junkyard in early 1979, he applied to the City of Scranton's Board of Zoning Appeals (Board) for a certificate of nonconforming use. That application, which was filed on April 20, 1979, stated that the yard was used for "the storage of scrap materials, junk motor vehicles and equipment used in the processing of scrap and waste materials." Included among the nonconforming uses Putkowski sought to have certificated was the storing, packing and disassembling of junk, and "the use of any equipment to accomplish that purpose." While awaiting a decision on his application, Putkowski began operating his mechanical car-crusher at the junkyard.[2]

Putkowski's crusher enabled him to process seventeen junk automobiles every seventy minutes; whereas the two previous owners of the yard, without the use of a mechanical crusher, could process only five or six autos a day. Based on that consideration, the Board treated Putkowski's application, to the extent that it involved the mechanical car-crusher and some other additions to the yard, as involving a new use. For that reason, *and to that extent,* the Board denied the application. The Board's decision was made on December 3, 1979, and resulted from hearings that were held in May and September of 1979.[3] It should be pointed out that the Board, in reaching its decision, found that Putkowski's application was completely

---

[2] Putkowski's application to the Board did not specifically mention a crusher.

[3] On May 23, 1979, the Board issued a decision in the form of an opinion letter to the applicant. Thereafter, the Court of Common Pleas of Lackawanna County ordered the Board to take additional evidence; and, to that end, the Board held another hearing in September of 1979. Subsequent to that hearing, the court again remanded the matter to the Board for a further consideration of evi-

based on the *full-time* use of the mechanical crusher as a central component of his junkyard business.

On January 14, 1980, the Board sent Putkowski a letter that indicated the granting of a limited certificate of nonconforming use. The body of that letter stated the following:

This certificate of nonconforming use is limited to the operation that was conducted by Mr. Saul Baiderman, located at 417 North Keyser Avenue, in the City of Scranton, County of Lackawanna, State of Pennsylvania.

This certificate of nonconforming use specifically denies the operation of a car-crusher and all other heavy duty equipment *that was not in operation when Mr. Saul Baiderman conducted his business.* (Emphasis added.)

Regarding the Board's decision of December 3, 1979, Putkowski had taken an appeal to the Court of Common Pleas of Lackawanna County.[4] On February 19, 1980, the Court of Common Pleas, without receiving additional evidence, issued an order upholding the Board's decision. On April 22, 1981, our Court affirmed the trial court's order. *Putkowski v. City of Scranton*, 58 Pa. Commonwealth Ct. 604, 428 A.2d 743 (1981) *(Putkowski I).* We held that the introduction of the mechanical car-crusher would, as the Board had found, constitute a drastic change in machinery, procedures and buildings, of a magnitude so great as to be a new use. *Id.* at 606, 428 A.2d at 744.

---

dence. On December 3, 1979, the Board issued a new decision that re-adopted its previous opinion. Hence, we shall refer to the Board's final decision as being dated December 3, 1979.

4 In rsponse to the Board's opinion of May 23, 1979, Putkowski took a timely appeal to the Court of Common Pleas. It was in the context of that appeal that the court twice ordered remands.

During the period that the Board's decision was in the channels of judicial review, Mr. Putkowski continued or resumed the use of the mechanical car-crusher at his junkyard. Consequently, on March 18, 1981, prior to our decision in *Putkowski I*, the City of Scranton filed an equity action in the Court of Common Pleas of Lackawanna County, seeking a preliminary injunction and a permanent injunction to restrain Putkowski from *all* use of the mechanical crusher at his junkyard.

The City's complaint alleged that Putkowski was continuously operating the crusher; and that any use of the machine at the yard was unlawful under the zoning ordinance and was violative of the Board's decision of December 3, 1979. The complaint further alleged that the use of the crusher constituted a public nuisance; that it was detrimental to the health, safety and welfare of the public, especially small children in the area; and that it inflicted immediate and irreparable harm on nearby residents.

In response to the City's complaint, Putkowski filed an answer that made various general and specific denials. The answer also included, under the heading of new matter, the following assertions: (1) that the trial court lacked jurisdiction to entertain the equity action because of the pendency of *Putkowski I* before our Court; (2) that the Board's decision of December 1979 was concerned with the issue of expanded, full-time use of the mechanical crusher, and not the defendant's right to continue the use his predecessor, Baiderman, had made of the machine; and (3), that the certificate issued to him by the Board, in January 1980, granted him the right to use the same crusher that had been employed by Baiderman. Relative to the last assertion, Putkowski further alleged that the crusher he had resumed using was the very

same one Baiderman had used; and that the current use of the machine was only sporadic.

On March 31, 1981, the trial court held an evidentiary hearing relative to the City's prayer for injunctive relief. At the conclusion of that hearing, the trial judge ruled from the bench that a preliminary injunction would be granted. The trial judge concluded that the issues then at bar were covered by the Board's decision of December 1979, and by the Common Pleas decision with respect thereto. The trial judge further concluded that any use of the mechanical car-crusher at Putkowski's junkyard was violative of those earlier decisions.

On April 8, 1981, the trial court issued a written order, or decree, whereby Putkowski was preliminarily enjoined from operating the mechanical crusher at his junkyard. The order further stated that the preliminary injunction would continue until final hearing, unless the then-pending *Putkowski I* resulted in a reversal of the Board's December 1979 decision. In the trial court's supporting written opinion, it is stated that the defendant was enjoined because the court felt that the entire issue would be resolved by our decision in *Putkowski I.*

In response to the injunction order, Putkowski filed the instant appeal on April 15, 1981.

Before this Court, the appellant restates contentions raised in his new matter below. He asserts that the Board's 1979 decision, insofar as the mechanical crusher was concerned, addressed only the *full-time or regular* use of the machine; and not the issue of its *occasional* use. From that assertion, he argues further that the issue of occasional use was not involved in either of the judicial appeals from the Board's 1979 decision. It is the appellant's position, in the instant matter, that the certificate of nonconforming use issued by the Board in January 1980 gave him the right

to use the crusher *to the same extent that his predecessor had used it;* and that, hence, such use by the appellant was not enjoinable.[5] He also argues that there was no "apparently reasonable ground" for the issuance of the preliminary injunction; and that the City had no "clear right" to such relief.

Section 617 of the Pennsylvania Municipalities Planning Code (MPC) expressly empowers a municipality to seek injunctive relief to restrain violations of its zoning ordinance.[6] It is a general rule that, where a preliminary injunction has been granted, the scope of appellate review is limited to examining the record to determine if there were "any apparently reasonable grounds" for the action of the court below. *Township of South Fayette v. Commonwealth,* 477 Pa. 574, 385 A.2d 344 (1978); *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A.2d 626 (1956). Only if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the decision be interfered with. *Singzon v. Department of Public Welfare,* 496 Pa. 8, 436 A.2d 125 (1981); *Lindenfelser.*

In sum, a decree granting a preliminary injunction will not be interfered with on appellate review in the absence of a plain abuse of discretion by the court below. *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975). Moreover, in the exercise of such review, an appellate court will not inquire into the merits of the underlying controversy. *Singzon; Roberts v. School District of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975).

---

[5] This argument, which Putkowski raised in oral argument at the injunction hearing, is different from the assertion in his new matter about the rights conferred by the Board's letter of January 1980.

[6] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617.

However, it is also well established that, for a preliminary injunction to be sustained, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted. *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972).

At the risk of being somewhat repetitive, we shall amplify the trial court's reasoning for the entry of the preliminary injunction in the instant case. The trial judge concluded that all issues concerning Putkowski's right to use the mechanical crusher at the junkyard had been addressed by the 1979 decision of the Board, and by the Common Pleas decision affirming the Board. On that basis, the enjoining judge held that any operation of the crusher at the junkyard was a violation of those two previous decisions relating to Putkowski's application for a certificate of nonconforming use. As for the certificate issued by the Board in January of 1980, the enjoining judge concluded that the defendant had misconstrued the rights conferred by the document. In other words, according to the trial court, that certificate did not purport to give Putkowski any degree of right to use the crusher; not even a right to use it on a sporadic basis.

The foregoing chain of reasoning was propounded by the trial judge at the close of the injunction hearing. In the court's subsequent opinion, the basis for the injunction was put in the following terms: the defendant was enjoined because the court felt that the entire issue would be resolved by our decision in *Putkowski I;* and that to allow the defendant to continue using the crusher, because of the legal theory advanced by him, would permit him to circumvent what had already been litigated.[7]

---

[7] The enjoining court also pointed out, in its opinion, that Putkowski had been denied a supersedeas.

We cannot wholly agree that the Board's decision and the affirming Common Pleas decision were, by their terms, dispositive of the right Putkowski has claimed in this injunction matter: the right to use the mechanical crusher to the same extent that his predecessor had used it. The Board's decision, insofar as it related to the mechanical crusher, appears to have been concerned only with the full-time or regular use of the crusher; and does not seem to have considered the question of part-time or periodic use of the machine. After observing that applicant Putkowski proposed to bring about full-time use of the crusher, the Board treated his application as one seeking to legitimate such expanded use. The Board, in the conclusion of its written decision, stated that use *"to the extent contemplated by the applicant"* would be contrary to the zoning laws of the City. There is nothing in the affirming Common Pleas decision, or in our subsequent decision in *Putkowski I*, that would give the Board's adjudication more scope than it actually had.[8]

It should not be surprising that the decisions as to Putkowski's application for a certificate of nonconforming use did not address the issue of part-time use of the crusher: Putkowski's written application to the Board made no mention whatsoever of the crusher. Not until the application had been filed, did the Board discover that Putkowski was using the machine on a routine basis, and that gaining the right of such routine use was the central purpose of his application before the Board. In short, Putkowski never applied to the Board upon a claimed right of periodic use based on such a degree of prior nonconforming use by his predecessor, Baiderman. The significance of that

---

[8] Since the instant case involves an issue different from that in *Putkowski I*, that factor alone would defeat the appellant's initial challenge to the subject-matter jurisdiction of the enjoining court.

omission is that it legally precluded Putkowski from raising such an alleged prior nonconforming use as a defense to the injunction action here on appeal. The alleged existence of a prior nonconforming use cannot be raised by a property owner as a defense against an injunction, where the local zoning board is empowered to entertain such claims, and the property owner has not presented his claim to that tribunal. *Philadelphia v. Budney,* 396 Pa. 87, 151 A.2d 780 (1959); *Township of Millcreek v. Hurst,* 27 Pa. Commonwealth Ct. 85, 365 A.2d 896 (1976).

The preceding rule, in terms of its applicability to the instant case, is not defeated by Putkowski's attempt to base his claim of legal nonconforming use on the Board's certificate of January 1980. In our view, that document cannot reasonably be construed as meaning that part-time use of the crusher was deemed a legal nonconforming use. Moreover, as we have already held, and as the appellant himself asserts, the Board's 1979 decision did not address the issue of part-time use. In sum, the document relied on by Putkowski cannot be read as granting a right that was not the subject of the proceedings before the Board.[9]

Given the facts of this case, and the unavailing defense raised by the appellant, we conclude that the record supports the entry of the preliminary injunction; even though our decision is based on grounds different from those advanced by the court below. We should perhaps note, in passing, that if the appellant wishes to assert a right to use the mechanical crusher on a part-time basis, because of the activities of his predecessor, the appellant should file an application to that end with the Board; and have the question adjudicated

---

[9] One might question whether the Board's letter of January 14, 1980 actually had a legal efficacy for any purpose; because that document was issued after the Board had already formally decided the matter, and after the applicant had appealed from that decision.

in the first instance by that body. Although the merits of such an application are beyond the compass of our present review, we deem it suitable to mention the following consideration. It is difficult to imagine how Mr. Putkowski can establish a legal nonconforming use, as to the crusher, based solely on the use of the machine by predecessor Saul Baiderman: Baiderman's operation of the junkyard in question did not begin until 1970, which was about five years after the City of Scranton had enacted the controlling zoning ordinance.

The order of the trial court is affirmed.

## Order

And Now, the 19th day of May, 1983, the order of the Court of Common Pleas of Lackawanna County dated April 8, 1981, at No. 81 Equity 30, is affirmed.